STATE OF WEST VIRGINIA

*v.*

JOSEPH ALLEN FELLERS

(No. 13969)

Decided July 8, 1980.

*Douglas S. Rockwell* for plaintiff-in-error.

*Chauncey H. Browning*, Attorney General, *Joseph C. Cometti*, Assistant Attorney General, for defendant-in-error.

NEELY, CHIEF JUSTICE:

Joseph Allen Fellers appeals his burglary conviction in the Circuit Court of Jefferson County. He assigns two errors: first, that the circuit court erred in allowing the introduction into evidence of items of stolen property which were the result of an illegal and unlawful search on the grounds that the consent to search was not voluntary; and second, that the circuit court erred in allowing a witness to read a portion of a written statement given by another witness to the state police. We find the consent to have been voluntary and that the introduction of the prior inconsistent statement was a proper method of impeachment; therefore, we affirm.

On or about 15 May 1976 a house in Jefferson County was burglarized, and a few days later John Sandri, while in jail on other charges, confessed to the crime and implicated the appellant, Joseph Allen Fellers. Four state police officers went, with an arrest warrant and search warrant, to the appellant's farm and found the appellant working in the fields. Two troopers went into the field and requested the defendant to accompany them back to defendant's trailer. Upon returning to the trailer the troopers asked the appellant if he would allow them to search the premises, and the police produced a written consent to search form that would allow them to search the trailer.

The four state police officers were the only witnesses to testify at the suppression hearing, and they testified that the appellant, after the consent to search form had

been read to him, said something to the effect "go ahead, I don't have anything to hide, and when you finish, I'll sign the consent form." The purport of this conversation was written on the consent form by one of the officers. Two of the officers then proceeded to search the trailer, finding some of the items alleged to have been stolen (a blanket and a picture frame), and appellant was then arrested. The officers testified that they failed to announce that they had a search warrant, and that the conversation regarding the consent to search took place with all four of the officers within a car's length of the appellant. One of the officers testified that the search warrant, with an inventory on the back, was left with Eleanor Henry, an occupant of the searched premises, after the search was completed and after the petitioner had been arrested.

The second assignment of error concerns the introduction of a prior inconsistent statement. The State called as its witness, Eleanor Henry, the defendant's roommate, who had given an unsworn, written statement to one of the troopers following the defendant's arrest and some two weeks after the crime was committed. On direct examination Eleanor Henry stated that the appellant and his alleged accomplice, John Sandri, left the trailer at different times and returned at different times on the night of the burglary. She further testified that the appellant left the trailer to get some liquor and that he returned with some gin, while the alleged accomplice returned with a blanket (alleged to have been stolen in the burglary), along with items wrapped inside. The prosecutor then moved to have Miss Henry declared a hostile witness because her testimony conflicted with the prior written statement which indicated that both the defendant and the alleged accomplice had left the trailer together and that they had returned together with several of the items alleged to have been stolen.

After laying a foundation, by questioning Miss Henry concerning whether she remembered making a statement to the officer, the prosecutor asked her whether she had stated that the appellant and the alleged accom-

plice had left the trailer together on the night of the burglary. She responded she did not remember making such a statement and she also stated that she did not remember stating that the appellant and the alleged accomplice had left together for about two hours. The State thereupon called the trooper to the stand, but before he testified the trial court said, "this is for a limited purpose," indicating that the testimony was only to be used to impeach the credibility of Eleanor Henry. The trial court then permitted the officer, over a hearsay objection, to read a portion of Miss Henry's prior statement to the jury. The record reveals that upon cross-examination, Miss Henry stated that the appellant and the accomplice returned to the trailer together on the evening of the crime, the accomplice carrying a number of items in a blanket. She also testified that she could not remember or did not know whether the appellant and the accomplice had left the trailer at the same time on the night of the burglary.

## I

The first issue to be addressed is whether the defendant voluntarily consented to a search of his home.[1] Our Court has recently discussed the factors to be considered in determining the voluntariness of a consent to search in *State v. Williams*, ___ W.Va. ___, 249 S.E.2d 758 (1978), and our analysis in *Williams* provides the applicable test for the present case. Our Court, following the United States Supreme Court, held that the State's, "burden of proving that the consent was, in fact, freely and voluntarily given * * * cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548-549 (1968). While the State need not prove that the defendant knew that he had a right to refuse to allow the search, *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973),

---

[1] Where a person voluntarily and knowingly consents to a search of his premises, such a search may be conducted in the absence of a search warrant. *State v. Basham*, ___ W. Va. ___, 223 S.E.2d 53 (1976).

*accord,* syl. pt. 2, *State v. Basham,* 159 W.Va. 404, 223 S.E.2d 53 (1976), the defendant's knowledge of a right to refuse to consent is one of the relevant factors in determining whether the consent was voluntary which is "a question of fact to be determined from the totality of all the circumstances." *Schneckloth, supra,* at 227.

On the facts of this case, the consent of the defendant was voluntary. The events took place in and around his own home, not in the custody of the police at the station as occurred in *Williams.* While there were four policemen, they did not display their weapons, they did not use any threatening language, nor did they employ any ruse to trick the defendant into allowing the search. The police read the consent to search form to the defendant, which included a list of the items which were alleged to have been stolen (some of which were discovered in his house), and he gave his consent to the search. There is nothing in the record suggesting that the defendant has a subnormal intellect, unlike *Williams, supra,* where the record included expert testimony about the defendant's limited intelligence. In short, nothing in the record suggests that the defendant had any reason to believe that he was not free to end the conversation with the officers and to deny their request to search his house, and for that reason we conclude that the policemen's request to search was not coercive.

Our conclusion that the consent was voluntary is not affected by the fact that the defendant was not expressly told by the policemen that he was free to decline to cooperate with their inquiry since the voluntariness of his response does not depend upon his having been so informed. *Schneckloth, supra.* We also reject the argument that the only inference to be drawn from the fact that the defendant acted in a manner so contrary to his own self-interest is that he was coerced to grant the officers' request. The issue is only whether the consent was made voluntarily. The verbal consent given by the defendant was more than "mere submission to authority," *State v. Thomas,* 157 W.Va. 640, 230 S.E.2d 445 (1974), and that consent, along with the lack of any evi-

dence of coercion, demonstrates "by a preponderance of the evidence," *State v. Hacker*, 158 W.Va. 182, 209 S.E.2d 569 (1974), that the consent obtained for the search was voluntary.

## II

The second question in this case concerns the trial court decision to allow the introduction of a portion of an *ex parte* statement made by Eleanor Henry, the roommate of the defendant, in order to impeach her testimony. *State v. Wayne*, ____ W.Va. ____, 245 S.E.2d 838 (1978), and *State v. Spadafore*, 159 W.Va. 236, 220 S.E.2d 655 (1975), stand for the proposition that a prior statement may be introduced at trial to impeach the credibility of a witness at trial. Such a statement may only be introduced when the testimony of the witness is shown to be inconsistent with the contents of his or her testimony and such statement may be used only "sparingly." In considering the proper use of *ex parte* statements the guiding principle has been that "out of court statements should not be used as a ruse for introducing damaging material about which the witness did not specifically testify." *State v. Spadafore, supra*, 220 S.E.2d at 664.

The record clearly shows that Miss Henry testified inconsistently, and that the statements were used not to fill in loss of memory as in *Spadafore, supra*, but rather to *neutralize* the damaging comments made by her under oath. On direct examination she stated that the defendant and his alleged accomplice left the trailer at different times and returned at different times on the night of the burglary; however, the prior, out of court, statement given by her stated that the defendant left with the alleged accomplice at the same time and returned with the alleged accomplice with a blanket full of the items alleged to have been stolen. On cross-examination she changed her testimony and responded that while she could not remember when the defendant and the alleged accomplice had left the trailer, she did remember that the defendant and the alleged accomplice returned to the trailer together. Defendant argues that the statement was

used as a ruse to introduce impermissible evidence; however, the statements that were introduced were used to contradict the in court statement made by the witness and were not used to fill in any gaps in her memory. The statement was used sparingly and only those portions that directly contradicted the testimony of the witness on the stand were introduced by the State.

For the foregoing reasons, the judgment of the Circuit Court of Jefferson County is affirmed.

*Affirmed.*