400 S.E.2d 584

**STATE of West Virginia**

v.

**John Allen WHITT.**

**No. 19544.**

Supreme Court of Appeals of
West Virginia.

Dec. 14, 1990.

John Leo Bridi, Bridi & Bridi, Beckley, for John Allen Whitt.

Roger W. Tompkins, Atty. Gen., Richard M. Riffe, Sr. Asst. Atty. Gen., Atty. General's Office, Charleston, for State of W.Va.

MILLER, Justice:

In 1984, the defendant was convicted by a jury in the Circuit Court of Raleigh County of breaking and entering.[1] He received a one-to-ten year sentence for the breaking and entering conviction, which was enhanced five years because of a prior felony conviction. *See* W.Va.Code, 61–11–18 (1943). The defendant's chief assignments of error are the trial court's failure to suppress evidence secured from a boarding house where the defendant lived and the failure to promptly present him before a magistrate. A claim is also made that a State's witness lacked personal knowledge and should not have been permitted to testify. Further assignment is made as to ineffective assistance of counsel at trial.

### I. *The Search Warrant*

In the early morning hours of March 2, 1984, the police responded to a burglar alarm at the Hecks Department Store in Beckley. Inside the store, the investigating officer, accompanied by an assistant store manager, observed that intruders had entered the store through a vent in the roof. Further investigation revealed that a gun case had been broken into and that a few guns, as well as other items, had been stolen. The police officer asked the assistant store manager to prepare a written inventory of the missing items.

On March 9, 1984, the police received information from one of the defendant's coworkers, Terrance Allison, that the defendant had offered to sell him several rifles that were similar to those stolen from Hecks. Moreover, Mr. Allison stated that he had seen the stolen property hidden in the defendant's bedroom and in a storage area above a bathroom in the defendant's boarding house residence. After further questioning, Mr. Allison agreed to telephone the defendant and inquire about the stolen merchandise while the conversation was being tape recorded. During this conversation, the defendant told Mr. Allison that he would sell him the guns after he had filed the serial numbers off them. Based on this information, the police secured a search warrant.

On appeal, the defendant argues that Mr. Allison was coerced into making the telephone call; thus, the evidence seized from the boarding house should have been suppressed because it was obtained in violation of 18 U.S.C. § 2515[2] of the Omnibus Crime

---

1. The defendant's initial appeal was refused. Subsequently, the defendant filed a *pro se* petition for habeas corpus. This Court granted the petition and found that the defendant had been denied effective assistance of counsel in pursuing his original appeal. We remanded the case to the circuit court with instructions to appoint new counsel for purposes of perfecting a new appeal. *Whitt v. Holland,* 176 W.Va. 324, 342 S.E.2d 292 (1986). We commend appellate counsel for the thoroughness of his brief.

2. 18 U.S.C. § 2515 provides:

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the

Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.* This statute prohibits the admission of evidence derived from intercepted wire or oral communications.[3] The prohibition in 18 U.S.C. § 2515 is subject, however, to the consent exceptions contained in 18 U.S.C. § 2511(2)(c),[4] which permit a person acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception.[5]

In *United States v. Kolodziej,* 706 F.2d 590 (5th Cir.1983), the Fifth Circuit discussed the contours of the consent exception. In *Kolodziej,* federal agents wiretapped a telephone conversation between a co-conspirator and the defendant. The agents then used the recorded inculpatory statements to establish probable cause for an arrest warrant. The Fifth Circuit noted initially that the burden of proving voluntariness of the consent is on the government, and then went on to state:

"[The] burden can usually be met by showing that the informant placed the telephone call knowing that it would be monitored. *United States v. Glickman,* 9 Cir.1979, 604 F.2d 625, 633–34, *cert. denied,* 1980, 444 U.S. 1080, 100 S.Ct. 1032, 62 L.Ed.2d 764; *United States v. Bonanno,* 2 Cir.1973, 487 F.2d 654, 658. When, however, there is an allegation of coercion, the government must show that there has been no undue pressure, threats, or improper inducements. *See United States v. Kirk,* 8 Cir.1976, 534 F.2d 1262, 1273, *cert. denied,* 1977, 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091; *United States v. Juarez,* [5 Cir.1978], 573 F.2d [267] at 278. Raised expectations and hopes for leniency do not amount to coercion or improper inducement. *United States v. Llinas,* 5 Cir.1979, 603 F.2d 506, 508, *cert. denied,* 1980, 444 U.S. 1079, 100 S.Ct. 1030, 62 L.Ed.2d 762; *United States v. Juarez,* 573 F.2d at 278." 706 F.2d at 593.

*See also United States v. Silva,* 449 F.2d 145 (1st Cir.1971), *cert. denied,* 405 U.S. 918, 92 S.Ct. 942, 30 L.Ed.2d 787 (1972); *United States v. Barone,* 913 F.2d 46 (2d Cir.1990); *United States v. Jones,* 839 F.2d 1041 (5th Cir.), *cert. denied,* 486 U.S. 1024, 108 S.Ct. 1999, 100 L.Ed.2d 230 (1988); *United States v. Hodge,* 539 F.2d 898 (6th Cir.1976), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977); *United States v. Horton,* 601 F.2d 319 (7th Cir.), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979); *United States v. Zemek,* 634 F.2d 1159 (9th Cir.1980), *cert. denied,* 450 U.S. 985, 101 S.Ct. 1525, 67 L.Ed.2d 821 (1981); *United States v. Salisbury,* 662 F.2d 738 (11th Cir.1981), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2907, 73 L.Ed.2d 1316 (1982); *State v. Stanley,* 123 Ariz. 95, 597 P.2d 998 (App.1979); *People v. Montgomery,* 61 Cal.App.3d 718, 132

disclosure of that information would be in violation of this chapter."

3. In 1987, our state legislature passed the "West Virginia Wiretapping and Electronic Surveillance Act," W.Va.Code, 62–1D–1, *et seq.* Because the defendant was convicted in 1984, this Act does not apply. In *United States v. Marion,* 535 F.2d 697, 702 (2d Cir.1976), the court made this statement as to the interplay between the federal and state wiretap statutes:

"[W]hether the proceedings be federal or state, interpretation of a state wiretap statute can never be controlling where it might impose requirements less stringent than the controlling standard of Title III. If a state should set forth procedures *more* exacting than those of the federal statute, however, the validity of the interceptions and the orders of authorization by which they were made would have to comply with that test as well. (Citations omitted; footnote omitted; emphasis in original).

*See also United State v. Capra,* 501 F.2d 267 (2d Cir.1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975).

4. 18 U.S.C. § 2511(2)(c) states: "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception."

5. In Syllabus Point 15 of *Marano v. Holland,* 179 W.Va. 156, 366 S.E.2d 117 (1988), we discussed 18 U.S.C. § 2515 and found: "One spouse's interception of telephone communications by the other is a violation of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.,* which by its terms renders them inadmissible." We did not address the consent exception.

**344**

Cal.Rptr. 558 (1976); *State v. Mortoro*, 160 Conn. 378, 279 A.2d 546 (1971); *State v. Petta*, 359 So.2d 143 (La.1978); *State v. Bellfield*, 275 N.W.2d 577 (Minn.1978).

■ Thus, to summarize, before evidence can be admitted pursuant to 18 U.S.C. § 2511(2)(c), the State has the burden of showing that one of the exceptions in the statute exists. Where the State claims that one of the parties consented to the telephone call interception, its burden initially can be met by showing that the party placed the telephone call knowing it would be monitored. If there is an allegation that the consent was coerced, the State then must show that there were no undue pressure, threats, or improper inducements.

■ In this case, there was no allegation made at trial that Mr. Allison was coerced into consenting to the wiretap. The State showed that Mr. Allison agreed to make the telephone call with full knowledge that it would be tape recorded. Under *Kolodziej*, this evidence sufficiently showed that the consent was voluntary; thus, this information was properly used to obtain the search warrant.[6]

## II. *Delay in Promptly Presenting the Defendant Before A Magistrate*

■ The defendant urges that several incriminating admissions that he made should have been suppressed because he was not promptly presented before a magistrate. In Syllabus Point 1 of *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984), we stated:

" 'The delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant.' Syllabus Point 6, *State v. Persinger*, [169

W.Va. 121], 286 S.E.2d 261 (1982), as amended."

The defendant was arrested around 4:00 p.m. at his place of employment and was taken to the state police headquarters for fingerprinting, photographing, and other routine processing. He was given *Miranda* warnings,[7] which he waived in writing. He did not give a formal confession at this time. When the defendant learned that the police were going to search his bedroom, he agreed to cooperate with them and to show them where the contraband was hidden. He accompanied the police to the boarding house and helped them locate the stolen property. Afterwards, the group returned to police headquarters where the merchandise was inventoried in the defendant's presence.

The only incriminating statement that the defendant made was after he returned to the police station. He stated that while he was hidden in the loft of the store, he saw the police searching for him and that had they had come closer, he would have shot them.

Although the record is not entirely clear, it appears that the defendant was presented to a magistrate around 9:00 p.m., shortly after the evidence was inventoried at the station house. Most of the time between the defendant's arrest and his presentment was consumed by routine processing, the trip to secure the stolen property, and the subsequent inventory. The search at the boarding house, according to the police, took approximately two hours. The record does not reflect the time consumed traveling to and from the boarding house, initially processing the defendant, or completing the inventory.

The defendant was read his *Miranda* warnings and waived them in writing shortly after being arrested. He voluntarily agreed to accompany the police to his boarding house during the search. During this time, he was not subjected to any

6. The defendant also challenges the factual sufficiency of the search warrant affidavit and that it was based on hearsay. These objections were not raised below, but, even if they were, we believe the affidavit met the requirements of

*State v. Adkins,* 176 W.Va. 613, 346 S.E.2d 762 (1986).

7. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

formal interrogation. His only inculpatory statement was voluntarily made, according to the police.

■ Under our prompt presentment rules, W.Va.Code, 62–1–5,[8] and Rule 5(a) of the Rules of Criminal Procedure,[9] we have recognized that the delay in transporting a defendant to police headquarters and the time consumed in routine processing is not critical for prompt presentment purposes. *State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261 (1982). In several other cases, we have found that a delay in presenting the defendant to a magistrate after he has confessed does not violate our prompt presentment statute either, because the purpose of the statute is to avoid prolonged interrogation in order to coerce a confession. *State v. Hutcheson,* 177 W.Va. 391, 352 S.E.2d 143 (1986); *State v. Humphrey,* 177 W.Va. 264, 351 S.E.2d 613 (1986).

Moreover, this case is somewhat analogous to *State v. Wickline,* 184 W.Va. 12, 399 S.E.2d 42. In *Wickline,* the defendant was arrested at the murder site around 5:00 a.m. and was instructed to remain in a police cruiser while the officers completed their investigation. At approximately 9:00 a.m., the police officers left the crime scene and drove the defendant to the state police barracks. At around 10:00 a.m., the defendant gave a written confession. From the time she was arrested until she arrived at the police station, the defendant was not interrogated. We concluded that this delay was not critical and explained in Syllabus Point 4:

"The delay between the time of the arrest or custodial interrogation and the giving of a confession is most critical for prompt presentment purposes because during this time period custodial confinement and interrogation can be used to attempt to produce a confession."

■ Here, the delay in presentment was caused by routine police processing and the trip to the defendant's residence. The defendant voluntarily agreed to accompany the police on this occasion. There was no evidence to suggest that the defendant was interrogated during this time or while the merchandise was inventoried at the police station. It is clear that the oral statement was not the product of any custodial interrogation. We find no reversible error.[10]

### III. *Other Assignments*

■ The defendant claims that there was an insufficient foundation laid before the assistant store manager testified about the inventory of the missing items. The assistant store manager initially testified that he, the store manager, and another assistant store manager conducted the inventory. Defense counsel objected on the basis that the witness did not have personal knowledge about what the others had done. The prosecutor subsequently asked the assistant store manager whether he was present during the inventory, and whether the inventory was conducted under his supervision. The assistant store manager answered in the affirmative, and then proceeded to testify from the inventory list. No further objections were made.

Rule 602 of the West Virginia Rules of Evidence provides:

"**Lack of Personal Knowledge.** A witness may not testify to a matter unless evidence is introduced sufficient to

---

**8.** W.Va.Code, 62–1–5, provides, in part: "An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence, shall take the arrested person without unnecessary delay before a justice [magistrate] of the county in which the arrest is made."

**9.** Rule 5(a) states, in part: "An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before a magistrate within the county where the arrest is made."

**10.** An *in camera* hearing was held prior to trial on the voluntariness of the defendant's statement at which two officers testified. At trial, three different officers testified about the statement. The defendant alleges that it was error to permit the three officers to testify at trial because there was not an *in camera* hearing held before their testimony. We disagree because the officers at trial testified that it was the same statement and that they were present when the statement was made.

support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This rule is subject to the provisions of Rule 703 relating to opinion testimony by expert witnesses."

In *M.B.A.F.B. Federal Credit Union v. Cumis Insurance Society, Inc.*, 681 F.2d 930, 932 (4th Cir.1982), the Fourth Circuit explained the mechanics of Rule 602 of the Federal Rules of Evidence, which is identical to our rule:

"Rule 602, however, does not require that the witness' knowledge be positive or rise to the level of absolute certainty. Evidence is inadmissible under this rule only if in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed that which he testifies to." (Citations omitted).

*See also Hallquist v. Local 276, Plumbers & Pipefitters Union*, 843 F.2d 18 (1st Cir. 1988); *United States v. Davis*, 792 F.2d 1299 (5th Cir.), *cert. denied*, 479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986); *United States v. Peyro*, 786 F.2d 826 (8th Cir. 1986). *See generally* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 602[02] (1984). We believe this to be a correct approach to our Rule 602, and, therefore, we adopt it.

A similar rule applies to situations where an individual is testifying about statements contained in an inventory. *See United States v. Huber*, 772 F.2d 585 (9th Cir. 1985); *Missouri K. & T. Ry. Co. v. Jackson*, 174 F.2d 297 (10th Cir.1949); *Ace Freight Forwarding Co. v. Baltimore & O.R. Co.*, 202 A.2d 649 (D.C.App.1964). *Cf. Gem Drywall Corp. v. C. Scialdo & Sons, Inc.*, 42 A.D.2d 1045, 348 N.Y.S.2d 643 (1973), *aff'd*, 35 N.Y.2d 781, 362 N.Y.S.2d 152, 320 N.E.2d 867 (1974) (contractor's supervisor who supervised work was competent to establish performance of contracted work); *United States v. Endicott*, 803 F.2d 506 (9th Cir.1986) (supervisor

could testify about information found in records he had personally checked).[11]

Upon a review of the record, we find that the trial court did not abuse its discretion.

■ Defendant also asserts that his trial counsel was ineffective. Most of the claims of ineffectiveness deal with trial counsel's failure to make certain objections and to move to sever the counts in the indictment. We are unable to determine from the record whether trial counsel was ineffective. Accordingly, we reiterate the rule set out in Syllabus Point 11 of *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988):

"Where the record on appeal is inadequate to resolve the merits of a claim of ineffective assistance of counsel, we will decline to reach the claim so as to permit the defendant to develop an adequate record in habeas corpus."

For the foregoing reasons, the judgment of the Circuit Court of Raleigh County is affirmed.

Affirmed.

---

**11.** An inventory list prepared on a sporadic basis does not qualify as a record of a regularly conducted activity under Rule 803(6) of our Rules of Evidence.