566 S.E.2d 652

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Bryan McCLEAD, Defendant Below, Appellant.**

No. 30245.

Supreme Court of Appeals of West Virginia.

Submitted June 5, 2002.

Decided June 26, 2002.

Concurring and Dissenting Opinion of Justice Maynard July 8, 2002.

Concurring Opinion of Justice Starcher July 16, 2002.

Jason D. Parmer, Morgantown, West Virginia, Attorney for Appellant.

Darrell V. McGraw, Jr., Attorney General, Scott E. Johnson, Senior Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

PER CURIAM:

This appeal was filed by Bryan Keith McClead, appellant/defendant below (hereinafter referred to as "Mr. McClead"), from a sentencing order of the Circuit Court of Monongalia County. Mr. McClead was convicted by a jury of third offense DUI and driving on a revoked driver's license. The circuit court sentenced Mr. McClead to one-to-three years imprisonment on the DUI conviction and six months confinement on the driving on a revoked driver's license conviction.[1] Before this Court, Mr. McClead has assigned error to the trial court's denial of his pretrial motion to suppress evidence of the results of his blood test. After reviewing the briefs and record, and listening to the arguments of the parties, we find that the results of the blood test should have been suppressed as Mr. McClead was improperly coerced into taking the test. Consequently, we reverse Mr. McClead's conviction and sentence for third offense DUI, and remand this portion of his case for a new trial. We find no cause to disturb his conviction for driving on a revoked drivers' license.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On January 10, 2000, Mr. McClead was observed by a motorist driving erratically in the vicinity of Morgantown on Interstate 68. The motorist, Damon Tillman, was an off-duty Maryland police officer who was traveling to his alma mater, West Virginia University. Mr. Tillman observed Mr. McClead hit a sign as he exited the highway. After hit-

1. The sentences were ordered to be served concurrently.

ting the sign, Mr. McClead's vehicle stopped on a hillside. Mr. Tillman approached the stopped vehicle to see if anyone was hurt. Mr. McClead exited the vehicle with a dog and fled the scene on foot. Mr. Tillman thereafter used his cell phone to report the incident to the police.

Trooper J.P. Branham responded to the emergency call by Mr. Tillman. Trooper Branham was given a description of Mr. McClead by Mr. Tillman. Subsequently, Trooper Branham was able to locate Mr. McClead at a nearby shopping center. Mr. McClead initially denied having wrecked his car and fleeing the scene; but, subsequently he admitted to driving the car. Trooper Branham smelled alcohol on Mr. McClead's breath and observed that his speech was slurred and his eyes were glassy. Trooper Branham administered several field sobriety tests to Mr. McClead, who failed each test. Mr. McClead was thereafter placed under arrest.

Trooper Branham transported Mr. McClead to the Morgantown State Police Detachment. While at the Detachment, Trooper Branham read to Mr. McClead the West Virginia Implied Consent form and requested a chemical breath test. Mr. McClead refused to take the test. Trooper Branham then requested Mr. McClead submit to a blood test, which was also refused. Thereafter, Trooper Branham initiated the preparation of paper work to seek a search warrant to conduct a blood test. With the knowledge that a warrant would be used to obtain his blood, Mr. McClead changed his mind and consented to taking the blood test. Accordingly, he signed the consent form. The blood test revealed that Mr. McClead had a blood-alcohol level of .17%.

Subsequent to his arrest, Mr. McClead was indicted for third offense DUI and driving on a revoked driver's license. Mr. McClead filed a pretrial motion to suppress the blood test results on the ground that he requested to speak to an attorney before consenting to the test and Trooper Branham refused his request. The circuit court denied the mo-

tion. Testimony of the blood test results was presented at the trial. A jury convicted Mr. McClead of both charges in the indictment.[2] The circuit court thereafter sentenced Mr. McClead to one-to-three years imprisonment on the DUI conviction as well as six months confinement on the driving on a revoked driver's license conviction. From this sentence, Mr. McClead now appeals.

## II.

### STANDARD OF REVIEW

■ The issue presented in this appeal is whether the circuit court committed error in denying Mr. McClead's motion to suppress the blood test results. In syllabus point 1 of *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996), we set out the standard of review of a circuit court's ruling on a motion to suppress as follows:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

It has been further declared that "we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action." *State v. Lilly*, 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995).

## III.

### DISCUSSION

Mr. McClead argues that the blood test results should have been suppressed because he had a state constitutional right to speak with an attorney before deciding whether to take the blood test.[3] In our examination of the record in this case, we have determined

---

2. Mr. McClead did not testify during his trial.

3. During the suppression hearing Trooper Branham testified that he did not remember if Mr. McClead requested to speak with an attorney.

that we need not address this particular issue.

■ Although the issue was not raised by Mr. McClead, we have, *sua sponte,* concluded that it was plain error for Trooper Branham to inform Mr. McClead that a warrant could be used to obtain his blood. In syllabus point 1 of *State v. Myers,* 204 W.Va. 449, 513 S.E.2d 676 (1998), we addressed this Court's authority to invoke the plain error rule:

> This Court's application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. We may, sua sponte, in the interest of justice, notice plain error.

The statute authorizing the use of blood testing for the purposes of a DUI arrest, is W. Va.Code § 17C–5–4 (Supp.2001).[4] W. Va. Code § 17C–5–4(d) specifically provides that if a law enforcement agency has designated blood testing for DUI arrests "and the person arrested refuses to submit to the blood test, then the law-enforcement officer making the arrest shall designate either a breath or urine test to be administered." This provision provides for the use of alternative chemical testing if an arrestee refuses a blood test. The provision *does not* authorize the issuance of a warrant to compel the taking of blood from an arrestee who refuses to voluntarily take a blood test. Moreover, W. Va. Code § 17C–5–7(a) (1986), explicitly provides that "[i]f any person under arrest [for DUI] refuses to submit to any secondary chemical test, the tests shall not be given...."[5] The statute is clear. If an arrestee refuses a chemical test, it "shall not be given." Nothing in W. Va.Code § 17C–5–7(a) authorizes the issuance of a warrant to extract blood from an arrestee. Finally, Justice Miller observed, in *Jordan v. Roberts,* 161 W.Va. 750, 246 S.E.2d 259 (1978), that "[o]ur [DUI] statute, unlike some, precludes forcibly administering the test against the will of the

driver." *Jordan,* 161 W.Va. at 757, 246 S.E.2d at 263.

■ Since we have determined that no statutory authority exists for a police officer to obtain a warrant to extract blood from a DUI arrestee, we must, therefore, decide whether Mr. McClead, in fact, "voluntarily" consented to the blood test.

■ Our cases have indicated that a defendant can only be said to voluntarily consent to a matter if "it is clear that the accused has not only a full knowledge of all facts and of his rights, but a full appreciation of the effects of his voluntary relinquishment." *State v. Eden,* 163 W.Va. 370, 377, 256 S.E.2d 868, 873 (1979). In addition, we have held that "[a]lthough evidence acquired by consent is admissible against the accused in trial, mere submission to colorable authority of police officers is insufficient to validate a 'consent' search or to legitimatize the fruits of the search, and evidence so obtained is incompetent against an accused." Syl. pt. 8, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974). "To be voluntary, a consent must not be the 'product of duress or coercion,' nor a mere acquiescence to colorable legal authority." *State v. Worley,* 179 W.Va. 403, 410 369 S.E.2d 706, 713–714 (1988) (quoting *State v. Craft,* 165 W.Va. 741, 758, 272 S.E.2d 46, 56 (1980)). The issue of "[w]hether a consent ... is in fact voluntary or is the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Syl. pt. 8, *State v. Craft,* 165 W.Va. 741, 272 S.E.2d 46 (1980). *See also State v. Williams,* 162 W.Va. 309, 315, 249 S.E.2d 758, 762 (1978). Moreover, "the defendant's knowledge of a right to refuse to consent is one of the relevant factors in determining whether the consent was voluntary[.]" *State v. Fellers,* 165 W.Va. 253, 257, 267 S.E.2d 738, 741 (1980) (citation omitted). "The State has the burden of proving by a preponderance of the evidence that the consent ... was given vol-

---

**4.** W. Va.Code § 17C–5–4 has been amended twice since Mr. McClead's arrest. However, the amendments do not affect the issue addressed in this case.

**5.** West Virginia Code § 17C–5–7(a) goes on to provide for the revocation of an arrestee's driver's license for refusing certain chemical tests. However, W. Va.Code § 17C–5–4(d) states that "the refusal to submit to a blood test only may not result in the revocation of the arrested person's license to operate a motor vehicle in this state."

untarily." *State v. Buzzard,* 194 W.Va. 544, 550, 461 S.E.2d 50, 56 (1995) (citations omitted). Under this burden " 'the government must show that there has been no undue pressure, threats, or improper inducements.' " *State v. Whitt,* 184 W.Va. 340, 343, 400 S.E.2d 584, 587 (1990) (quoting *United States v. Kolodziej,* 706 F.2d 590, 593 (5th Cir.1983)). This burden "is not satisfied by showing a mere submission to a claim of lawful authority." *State v. Dyer,* 177 W.Va. 567, 572, 355 S.E.2d 356, 361 (1987) (citation omitted).

Based upon the facts in this case, we have little hesitancy in finding that Mr. McClead did not voluntarily consent to the blood test. Trooper Branham did not inform Mr. McClead that he had a right to refuse the blood test and that if he did so the blood test could not be administered against his will. Instead, Mr. McClead was mislead and misinformed by Trooper Branham. Mr. McClead was advised that blood could be taken from him against his will through the use of a search warrant. The record is clear that it was only because of this subtle coercion that Mr. McClead consented to the blood test. *See Bumper v. North Carolina,* 391 U.S. 543, 550, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968) ("When a law enforcement officer claims authority to search ... under a warrant, he announces in effect that the [defendant] has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent.").

Mr. McClead was given incomplete and inaccurate information regarding the consequences of his refusal to take the blood test. We cannot find that his consent to the blood test was voluntary as it was clearly secured by use of a coercing threat to obtain a search warrant. "We, therefore, are constrained to hold, considering the totality of the circumstances, that [Mr. McClead] did not freely and voluntarily consent to the [blood test], and that the trial court erred in admitting the [blood test results] into evidence." *State v. Williams,* 162 W.Va. 309, 317, 249 S.E.2d 758, 764 (1978).

## IV.

## CONCLUSION

Mr. McClead's conviction and sentence for third offense DUI is reversed and a new trial is awarded. Because Mr. McClead made no separate argument regarding the conviction and sentence for driving on a revoked driver's license, we do not disturb the disposition of that matter. The blood test results were not necessary for a conviction on driving on a revoked driver's license.

Affirmed in part; Reversed in part; and Remanded.

STARCHER, Justice, concurring:

(Filed July 16, 2002)

I join in the Court's *per curiam* opinion. The secondary blood test evidence was clearly obtained by means of improper police procedure and should not have been used as evidence against Mr. McClead.

Although the issue of an accused's right to speak with an attorney was raised in the pleadings, it is not addressed in the majority opinion. I, however, believe this issue to be worthy of a few words.

At the time Mr. McClead was taken into custody, the two intoxilyzer machines routinely used by officers in the Morgantown area for secondary DUI testing were not in working order. As a result of the inoperative breathalyzer machines, Mr. McClead was asked to submit to a blood test as provided for in *W.Va.Code,* 17C–5–4.

By statutory right, the appellant could have refused to submit to the taking of his blood for chemical testing. Mr. McClead had no idea what his "statutory rights" were, but he did know enough to request to speak to "his attorney." Rather than permitting the request, the arresting officer provided Mr. McClead with incomplete and inaccurate information regarding the consequences of refusing to submit to the blood test. The officer further advised the appellant of his "authority" for obtaining a warrant for such testing.

The average person knows little about chemical blood testing, or the legal ramifications relating thereto. It is recognized that

the administration of the secondary chemical blood testing is time-critical. And this is true whether the test is requested by one who has been arrested for driving under the influence, or demanded by the State. Regardless, when an arrestee has the foresight to request to speak to an attorney, or some other party, to seek advice, the request should not be stifled—so long as such request does not jeopardize the timely administration of the test, should it be chosen. In such situations, the guidance of counsel or advice of a friend might be helpful to laymen, such as Mr. McClead, in making his decision on whether to submit to the test. Under the facts of the instant case there was no reason to deny Mr. McClead a reasonable opportunity to speak with "his attorney."

The proper functioning of our system of justice demands fairness on the part of the State. Mr. McClead abdicated to a blood test because he was misled and misinformed concerning his legal rights. When rights are waived because of ignorance or through intimidation and the accused is denied a reasonable request to consult counsel, the state is given an unfair advantage. As a matter of fundamental fairness, detainees should not be held incommunicado and forced to make significant legal decisions based solely on the advice of their accuser rather than their attorney.

Additionally, it should be recognized that there is substantial difference between the methods of collecting body samples for chemical testing. Inherently, the extraction of blood from the body is far more intrusive than collecting samples of breath or urine. There is statutory authority, *W.Va.Code,* 17C–5–4(d), to designate either a breath or urine test when an arrestee refuses to submit to having blood extracted. The record in this case does not show that the officer, facing the problem of inoperative breathalyzer machines, ever considered that a urine test be used as the secondary chemical test. The officer simply "forced" the blood test upon the appellant.

Somewhere, common sense must be applied. It can in no way be unreasonable to permit an arrestee the opportunity to consult with counsel, or some other person, provided that it does not interfere with the timely administration of tests. In this case, the police were unable to administer the more commonly designated breath test due to technical problems with their breathalyzer machines. Mr. McClead asked to speak with his attorney before consenting to a blood test. It was approximately 2:25 p.m. on a weekday afternoon. The attorney that the defendant wished to contact was most likely readily available at that time. The request was made approximately one-half hour after the arrest, and, therefore, a brief conversation with an attorney, or other person, would not interfere with the timely administration of a blood test—should it be decided upon. There was sufficient time for both a telephone call and the administration of the blood test without substantial interference with the investigation. The defendant made a timely and reasonable request to speak with his attorney, and that opportunity should have been permitted.

Consideration given to the points above, I respectfully concur in the majority's opinion.

I am authorized to state that Justice ALBRIGHT joins in this concurring opinion.

MAYNARD, Justice, concurring in part and dissenting in part.

(Filed July 8, 2002)

I concur to affirming the appellant's conviction for driving on a revoked driver's license. However, I dissent to the reversal of the appellant's third offense DUI conviction.

Specifically, I disagree with the majority's interpretation of W.Va.Code § 17–5–7(a) which states, in part, that "[i]f any person under arrest ... refuses to submit to any secondary chemical test, the tests shall not be given[.]" I believe that this simply means that the refusal to submit to a secondary chemical test triggers the administrative procedures necessary to suspend the party's driver's license. Moreover, proper evidence of this refusal, without any additional evidence of intoxication, may result in revocation of the party's driver's license. *See* W.Va.Code §§ 17C–5–4(e) and 17C–5–7(a).

Unlike the majority, I do not believe that the implied consent provision preempts the application of traditional search and seizure

principles to DUI criminal prosecutions. Nothing in the text of these statutes expressly indicates a Legislative intent to do so. Further, a fair reading of these statutes does not conflict with search and seizure law. Therefore, I believe that nothing in our implied consent law prevented Trooper Branham from obtaining a warrant if he could convince a neutral magistrate of the existence of probable cause.

In sum, I conclude that it was not error, plain or otherwise, for Trooper Branham to inform the appellant that a warrant could be used to obtain his blood. Accordingly, I dissent to the reversal of the appellant's third offense DUI conviction.