350 S.E.2d 537

**STATE of West Virginia**

v.

**Robert HAMBRICK.**

**No. 17082.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 1, 1986.
Decided Nov. 12, 1986.

Hugh C. Wood, Kwass, Stone, McGhee & Feuchtenberger, Bluefield, for appellant.

Gayle Fiddler, Asst. Atty. Gen., Charleston, for appellee.

MCGRAW, Justice:

This is an appeal by Robert Hambrick from a final judgment entered in the Circuit Court of Mercer County following a jury verdict of guilty of felony breaking and entering in violation of West Virginia Code § 61–3–12 (1984 Replacement Vol.). The appellant was sentenced to an indeterminate term of one to ten years in the penitentiary. He now appeals pursuant to West Virginia Code § 58–5–1(j) (1966), contending that the circuit court erred when it failed to suppress certain physical evidence seized from and statements made by the appellant.

The evidence presented at trial showed that Jesse Ray Bennett broke into a convenience store known as Herbie's-By-The-Way during the early morning hours of October 22, 1984. The appellant acted as lookout for Jesse Bennett and helped him carry away the items taken, which included three cases of beer in long-neck bottles, four or five cartons of cigarettes, and a display case containing various items of Western-styled turquoise jewelry and accessories. The two men carried the goods to the nearby home of Shirley Bennett, Jesse's mother.

At about two o'clock, Jesse and the appellant awakened two other residents of the house, Timmy Hambrick, the appellant's son, and Scotty Bennett, the brother of Shirley's ex-husband, and invited them to come down to the basement to drink some beer. Scotty testified that he declined, saying that he had to get ready to go to work. Shirley showed Scotty a ring she said the appellant had given her, which she speculated was stolen. On his way to work, Scotty noticed the broken window at Herbie's-By-The-Way. Scotty was on parole on a federal charge and did not wish to be implicated in any criminal activity, so he called the state police.

At approximately 4:30 a.m., after the trooper had notified the store's owner of the breaking and entering, Scotty took him to Shirley's house. Scotty and the trooper went through the side yard, approaching the basement door, which was open. Several long-neck bottles of beer, approximate-

ly ten packs of cigarettes, and some jewelry were visible through the open door. Scotty went in first, followed by the trooper.

In response to a question, the appellant provided the trooper with an explanation of where the items came from.[1] The trooper placed Jesse and the appellant under arrest and gathered up the beer, cigarettes, and jewelry. The men were taken to the state police office in Princeton, where they were advised of their rights at 5:40 a.m. The appellant refused to make a written statement, but again offered an explanation of how the items seized by the trooper came into his possession.

### I.

The appellant's primary argument is that Scotty could not give a valid consent for the state trooper to search the basement and that, therefore, the items seized should not have been admitted into evidence.[2] In determining whether to suppress evidence produced from the search, the circuit court acted as trier of fact for two basic questions. First, based on the totality of all the circumstances, was the consent to search freely and voluntarily given, rather than being the product of duress or coercion? *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Farmer,* 173 W.Va. 285, 315 S.E.2d 392 (1983); *State v. Craft,* 165 W.Va. 741, 272 S.E.2d 46 (1980); *State v. Williams,* 162 W.Va. 309, 249 S.E.2d 758 (1978). Second, the trial court must make a factual determination whether the consenting party possessed the requisite authority over or relationship to the premises to be searched to justify his allowing the police to conduct a search. *People v. Seidel,* 115 Ill.App.3d 471, 70 Ill.Dec. 780, 449 N.E.2d 1384 (1983); *Swink v. State,* 617

S.W.2d 203 (Tex.Crim.App.), *cert. denied,* 454 U.S. 1087, 102 S.Ct. 648, 70 L.Ed.2d 624 (1981).

In the instant case, it is uncontested that Scotty freely consented to the search. Instead, the appellant argues that the basement was his bedroom for the night, that he had a reasonable expectation of privacy there,[3] and that Scotty did not have common authority over the area so as to be able to validly authorize a search. The circuit court considered and rejected these contentions and ruled that the basement was a common area in which the appellant had no reasonable expectation of privacy and that Scotty, as a co-occupant of the house, had authority to permit the search.

In reaching its conclusion, the court had before it numerous pieces of evidence, the most pertinent of which are detailed below. On the two or three nights a week when the appellant would stay at the house, he generally slept in Shirley's bedroom. The basement was used as a sort of family area; Jesse and Timmy slept there most often, but any member of the household might go there to drink and might pass out and sleep there. Scotty had been an occupant of the house for approximately four years and had never been told he could not bring people to the house. The appellant had invited Scotty to come down to the basement to drink that same night. The door to the basement was never locked and was standing open when Scotty and the trooper approached. Given all these facts, we cannot say that the trial court's ruling was plainly wrong, which is our standard of review for factual determinations. Syllabus Point 6, *Mahoney v. Walter,* 157 W.Va. 882, 205 S.E.2d 692 (1974). There was no reversible error in the circuit

---

**1.** This initial statement was not used at trial but a similar one made at police headquarters later was introduced.

**2.** "[I]t is well established that the search and seizure conducted by the police is not unlawful or unreasonable, notwithstanding the absence of ... a search warrant, where the search is voluntarily consented to ... provided, the consenting person has the authority to consent.

*State v. Williams,* 162 W.Va. 309, 314, 249 S.E.2d 758, 762 (1978) (citations omitted).

**3.** In order to claim protection from search and seizure under the fourth amendment to the United States Constitution and article three, section six of the West Virginia Constitution, a person must have a reasonable expectation of privacy. *State v. Peacher,* 167 W.Va. 540, 280 S.E.2d 559 (1981).

court's decision not to suppress the evidence seized following the search.

## II.

The appellant also contends that the trial court erred when it failed to suppress the statement he made to the state trooper. The appellant claims to have been so intoxicated at the time the statement was made that he lacked the capacity to knowingly and intelligently waive his right to self-incrimination.

In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the Supreme Court of the United States ruled that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." In *State v. Bragg*, 160 W.Va. 455, 235 S.E.2d 466 (1977), we expressly confirmed our adherence to the principles enunciated in *Miranda*. A defendant, however, may waive his rights relating to self-incrimination, "provided the waiver is made voluntarily, knowingly and intelligently." *Bragg*, 160 W.Va. at 460, 235 S.E.2d at 470 (quoting *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612.).

This Court has ruled that a person may lack the mental capacity to effectively waive these rights. *State v. Hamrick*, 160 W.Va. 673, 236 S.E.2d 247 (1977). A defendant's claim of intoxication may bear on the voluntary nature of any waiver of rights. *State v. Hall*, 174 W.Va. 599, 328 S.E.2d 206 (1985). However, a statement is not made inadmissible on this basis unless the degree of intoxication is such that the defendant lacked the capacity to voluntarily and intelligently waive his rights. *Id.*, Syllabus Point 1.

In this case, as in the *Hall* case cited above, we believe that the trial court must be upheld in its factual finding that the appellant made a knowing and intelligent waiver of his rights and in its refusing to suppress the custodial statement made at the state police office. The prosecution presented evidence sufficient to show that the appellant's statement was freely and intelligently given. *See Williams*, 162 W.Va. at 317–18, 249 S.E.2d at 764. There is no contention of police coercion of any kind. The state trooper adequately explained the appellant's rights and testified that he felt the appellant understood. The appellant testified during the suppression hearing that he remembered being read his rights at the state police office. He signed the form and refused to waive his rights or give a written statement. He did, however, tell the trooper that he wanted to explain how the seized items came to be in his possession. The trial court found this explanation to be rational, constituting evidence of the appellant's lucid state at the time. Given this evidence, the admission of the custodial statement does not constitute reversible error.

For these reasons, we affirm the judgment of the Circuit Court of Mercer County.

Affirmed.