474 S.E.2d 501

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Virgil Luther IVEY, Defendant Below, Appellant.**

No. 23079.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 27, 1996.

Decided June 14, 1996.

572

Christopher S. Moorehead, Assistant Public Defender, Fayetteville, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Victor S. Woods, Assistant Attorney General, Charleston, for Appellee.

McHUGH, Chief Justice.

Defendant Virgil Luther Ivey entered a conditional plea of guilty in the Circuit Court of Fayette County, pursuant to *West Virginia Rules of Criminal Procedure* 11(a)(2),[1] to one count of negligent shooting, wounding or killing of human being or livestock while hunting, a misdemeanor under *W. Va.Code*, 20–2–57 [1991]. Defendant entered this plea following the trial court's denial of his motion to dismiss and motion to declare *W. Va.Code*, 20–2–57 [1991] unconstitutional. This Court has before it the petition for appeal, all matters of record and the briefs and arguments of counsel. For the reasons discussed below, the order of the circuit court is affirmed.

## I.

The facts of this case are not in dispute. On November 22, 1994, defendant Virgil Luther Ivey (hereinafter "defendant") and a hunting companion, Jay Dee Adkins, went deer hunting in Fayette County, West Virginia. In a statement to a Division of Natural Resources Officer, defendant described the following events which occurred as the two men were preparing to return home from a day of hunting, at approximately 3:30 p.m.:

> I took the clip out of my gun, and I unloaded his gun, and then I gave his back to him and I layed my gun across my arm. And it went off. Once it went off I didn't know what was going on, I grabbed and tried to care [sic] him out and he said go get help. So I ran out and flagged a red truck down, and they took me to Mr. Haywood's and I got some towels and I told Mr. Haywood that he was shot, that I accidentally shot him. I went back in the red truck and ran back to J.D. [the victim].

The "Hunting Incident—Field Workbook" prepared by DNR officers (hereinafter "DNR report") indicated that defendant had removed the clip from his 30.06 caliber rifle but had failed to remove the cartridge from the rifle chamber. Defendant "then placed the gun across hi[s] arm and the gun fired striking the victim in the chest." The victim was taken to Beckley Appalachian Regional Hospital but died soon thereafter from "massive blood loss."

According to the DNR report, the defendant and the victim were dressed in proper hunting gear, had valid hunting licenses, were hunting deer in season and exhibited no signs of alcohol or drug use. A DNR reporting officer indicated that following the incident, defendant was "polite" and "cooperative" and that his face was "flushed" and his eyes, "watery." The DNR report further indicated that appellant was visibly "upset and shaken." The conditions of the scene at the time of the incident were reported as follows: "The area of the incident was flat, with good visibility and open cover. The weather was clear and sunny." Finally, after interviewing the family of the victim, authorities could discern no motive or intent on the part of the defendant. Accordingly, the DNR report concluded that "[t]he Medical Examiner felt that an autopsy was unnecessary, due to the fact no evidence of foul play."

---

1. *W. Va. R.Crim.P.* 11(a)(2) provides:

   Rule 11. Pleas. (a) Alternatives.... (2) Conditional Pleas. With the approval of the court and the consent of the state, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

On January 4, 1995, defendant appeared in magistrate court where, after stipulating to the facts in the complaint, he was found guilty of violating *W. Va.Code*, 20–2–57 [1991], which provides:

It is unlawful for any person, while engaged in hunting, pursuing, taking or killing wild animals or wild birds, to carelessly or negligently shoot, wound or kill any human being or livestock, or to destroy or injure any other chattels or property.

Any person who, in the act of hunting, pursuing, taking or killing of wild animals or wild birds, in any manner injures any person or property shall file with the director a full description of the accident or other casualty, including such information as the director may require. Such report must be filed during a period not to exceed seventy-two hours following such incident.

Any person violating this section is guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one thousand dollars nor more than ten thousand dollars, or imprisoned in the county jail not more then one year, or both fined and imprisoned. Restitution of the value of the livestock, chattel or property injured or destroyed shall be required upon conviction.

Defendant was sentenced to one year in jail and fined the minimum fine of $1,000.

On January 20, 1995, on appeal of his conviction to the Circuit Court of Fayette County, defendant entered a plea of not guilty to violating *W. Va.Code*, 20–2–57 [1991]. On January 26, 1995, defendant filed a motion to dismiss the appeal "on the grounds that gross negligence is not present, and simple negligence is insufficient to hold a person criminally responsible." On February 2, 1995,[2] defendant filed a motion to declare the language in *W.Va.Code*, 20–2–57 [1991] requiring a criminal defendant involved in a negligent shooting "to give a statement to the [DNR] Officers [to be] fa-

cially unconstitutional and that the defendant has an absolute right not to make any statements[,]" under the Fifth Amendment to the United States Constitution.[3]

At the March 9, 1995 hearing on defendant's motions, the trial court denied defendant's motion to dismiss, stating:

I think [the legislature] had in mind that they were dealing with instruments designed for killing, primarily, and I think the legislature can and it did create a statutory scheme which holds people who are armed with instruments of death, instruments that are created for that specific purpose, to a standard not nearly as high as statutes and case law has created for other conduct which could result in criminal penalties.

The legislature clearly said that careless conduct or negligent conduct which resulted in the death of a human being can cause one to be held accountable under this statute.

. . . .

And I think the legislature clearly had in mind to deal with those instruments and the people who carry them, so that people will have to be extraordinarily careful with how they discharge and handle those weapons.

So I think the legislature clearly in its policy-setting prerogative can establish a lesser standard such as they've established here, simple carelessness or simple negligence.

The trial court likewise denied defendant's motion to declare *W. Va.Code*, 20–2–57 [1991] unconstitutional.

Defendant subsequently entered a conditional plea of guilty, pursuant to *W. Va. R.Crim.P.* 11(a)(2), *supra*, and now appeals the denial of the aforementioned motions to this Court.

---

**2.** Also on February 2, 1995, defendant filed a motion to suppress any and all statements made by him "on the grounds that the statements were a direct result of coercion or inducements made to the defendant; that the statements so made were not voluntary, and the statements so given were taken in violation of [defendant's constitu-

tional rights]." Defendant's counsel never pursued this motion.

**3.** *U.S. Const.* amend. V states, in pertinent part, that "[n]o person ... shall be compelled in any criminal case to be a witness against himself[.]"

## II.

■ The first issue on appeal is whether the trial court, in denying defendant's motion to dismiss the circuit court appeal of his conviction, properly determined that proof of ordinary negligence or ordinary carelessness is sufficient to convict a defendant under *W. Va.Code,* 20–2–57 [1991]. Defendant argues that the terms "carelessly" and "negligently" in *W. Va.Code,* 20–2–57 [1991] should be interpreted to mean gross negligence, that is, something greater than ordinary carelessness or ordinary negligence.

■ In the valid exercise of its police power, the legislature enacted *W. Va.Code,* 20–2–57 [1991], imposing criminal penalties on "any person, while engaged in hunting, pursuing, taking or killing wild animals or wild birds, [who] carelessly or negligently shoot[s], wound[s] or kill[s] any human being[.]" *Id.,* in relevant part. The police power of the State is the inherent power of government to preserve the peace, security, morals and general welfare of the community. *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 750, 143 S.E.2d 351, 359 (1965). *See also Security National Bank & Trust Co. v. First W. Va. Bancorp, Inc.,* 166 W.Va. 775, 780, 277 S.E.2d 613, 616 (1981), *dismissed,* 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284. The State, through its legislative branch, is vested, therefore, with the right and authority "to enact laws, within constitutional limits, to promote the general welfare of its citizenry." *City of Princeton v. Buckner,* 180 W.Va. 457, 464, 377 S.E.2d 139, 146 (1988). *See Tri–State Greyhound Racing, Inc. v. Johnson,* 160 W.Va. 33, 37 n. 1, 230 S.E.2d 837, 839–40 n. 1. In syllabus point 3 of *City of Princeton, supra,* this Court held:

> 'The police power is the power of the state, inherent in every sovereignty, to enact laws, within constitutional limits, to promote the welfare of its citizens. The police power is difficult to define precisely, because it is extensive, elastic and constantly evolving to meet new and increasing demands for its exercise for the benefit of society and to promote the general welfare. It embraces the power of the state to preserve and to promote the general welfare and it is concerned with whatever affects the peace, security, safety, morals, health and general welfare of the community. It cannot be circumscribed within narrow limits nor can it be confined to precedents resting alone on conditions of the past. As society becomes increasingly complex and as advancements are made, the police power must of necessity evolve, develop and expand, in the public interest, to meet such conditions.' Syl. pt. 5, *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965).

■ Clearly, the legislature, in the proper exercise of its police power, has the authority, within constitutional limits, to create and define crimes. *See* syl. pt. 4, *State ex rel. Cogar v. Kidd,* 160 W.Va. 371, 234 S.E.2d 899 (1977). This includes the power to criminally sanction an act of ordinary negligence or ordinary carelessness. *See State v. Arena,* 46 Haw. 315, 379 P.2d 594 (1963); *Commonwealth v. Berggren,* 398 Mass. 338, 496 N.E.2d 660 (1986); *Haxforth v. State,* 117 Idaho 189, 786 P.2d 580 (Ct.App.1990); *State v. Lucero,* 87 N.M. 242, 531 P.2d 1215 (Ct. App.1975), *cert. denied,* 87 N.M. 239, 531 P.2d 1212 (1975); *Owens v. Commonwealth,* 487 S.W.2d 897 (Ky.1972).

We can think of fewer arenas where the exercise of ordinary care is more critical than in the sport of hunting, so popular among citizens of our State. Indeed, we believe that in enacting *W. Va.Code,* 20-2-57 [1991], our legislature was painfully aware of those tragic accidents which occur as the result of the simple failure to exercise ordinary care in the use of a deadly firearm. *See State v. Jones,* 152 Me. 188, 126 A.2d 273, 277 (Maine 1956) (dissenting opinion).

Defendant maintains, however, that the criminal penalties set forth in *W. Va.Code,* 20–2–57 [1991] should attach only upon proof of criminal negligence, not ordinary negligence or carelessness. Defendant's primary argument is a comparison of *W. Va.Code,* 20–2–57 [1991] with the offenses of involuntary manslaughter and negligent homicide.

■ The common law offense of involuntary manslaughter and the statutory offense of negligent homicide are crimes which carry

similar elements and penalties. Involuntary manslaughter, a misdemeanor, is committed "when a person, while engaged in an unlawful act, unintentionally causes the death of another, or where a person engaged in a lawful act, unlawfully causes the death of another." Syl. pt. 7, *State v. Barker*, 128 W.Va. 744, 38 S.E.2d 346 (1946). Negligent homicide is defined in *W. Va.Code*, 17C–5–1 [1979] as occurring "[w]hen the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle anywhere in this state in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide." *Id.*, in relevant part. The penalties for conviction of either involuntary manslaughter or negligent homicide is imprisonment for not more than one year or a fine no greater than one thousand dollars, or both. *See W. Va.Code*, 61–2–5 [1923] (penalties upon conviction of involuntary manslaughter) and *W. Va.Code*, 17C–5–1 [1979] (penalties upon conviction of negligent homicide).

Defendant relies on this Court's previous determination that conviction of the offenses of involuntary manslaughter and negligent homicide requires proof of something more than an act of ordinary negligence. *State v. Vollmer*, 163 W.Va. 711, 259 S.E.2d 837 (1979). According to defendant, a violation of *W. Va.Code*, 20–2–57 [1991] should likewise be premised on conduct greater than simple negligence or simple carelessness.

■ In light of the express language of *W. Va.Code*, 20–2–57 [1991], we are not persuaded by defendant's argument. *W. Va.Code*, 20–2–57 [1991] makes it "unlawful for any person, while engaged in hunting, pursuing, taking or killing wild animals or wild birds, to carelessly or negligently shoot, wound or kill any human being[.]" *Id.*, in relevant part. The terms "carelessly" and "negligently" appear in *W. Va.Code*, 20–2–57 [1991] without modification or qualification. The term "negligence," standing alone, means simply "'the failure of a reasonably prudent person to exercise due care in his conduct toward others from which injury might occur.'" *Pack v. Van Meter*, 177 W.Va. 485, 494, 354 S.E.2d 581, 590 (1986) (*quoting*

*Walker v. Robertson*, 141 W.Va. 563, 570, 91 S.E.2d 468, 473 (1956), *overruled on other grounds, Graham v. Wriston*, 146 W.Va. 484, 120 S.E.2d 713 (1961)). Moreover, the term "careless" has been construed to be synonymous with "negligent." *Harris v. Moriconi*, 331 So.2d 353, 355 (Fla.Dist.Ct.App.1976), *overruled on other grounds, Reed v. Bowen*, 512 So.2d 198 (Fla.1987). *Cf. Spurlin v. Nardo*, 145 W.Va. 408, 114 S.E.2d 913 (1960).

■ This Court has consistently adhered to the following principle of statutory analysis: "'"Where language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968).' Syl. Pt. 1, *Peyton v. City Council of Lewisburg*, 182 W.Va. 297, 387 S.E.2d 532 (1989)." Syl. pt. 3, *Hose v. Berkeley County Planning Commission*, 194 W.Va. 515, 460 S.E.2d 761 (1995). To interpret the language of *W. Va.Code*, 20–2–57 [1991] to mean gross negligence, as defendant argues, or conduct greater than ordinary negligence or ordinary carelessness, would be inconsistent with the clear and unambiguous terms of the statute. Accordingly, we hold that under *W. Va.Code*, 20–2–57 [1991], it is unlawful for any person, while engaged in hunting, pursuing, taking or killing wild animals or wild birds, to act with ordinary carelessness or ordinary negligence in shooting, wounding or killing any human being or livestock, or in destroying or injuring any other chattels or property. Any person violating *W. Va.Code*, 20–2–57 [1991] is guilty of a misdemeanor, and upon conviction thereof shall be fined not less than one thousand dollars nor more than ten thousand dollars, or imprisoned in the county jail not more than one year, or both fined and imprisoned.

### III.

■ The final issue for our review is whether the trial court properly denied defendant's motion to declare *W. Va.Code*, 20–2–57 [1991] unconstitutional. Defendant's primary argument is that the statute's requirement that he file with the Director of the Division of Natural Resources "a full description of the accident or other casualty, including such information as the director may require[,]" violated defendant's right

against self-incrimination, under the Fifth Amendment to the *United States Constitution*[4] and art. III, section 5 of the *West Virginia Constitution.*[5]

We find defendant's argument to be without merit. The facts of this case reveal that defendant voluntarily, knowingly and intelligently waived his constitutional right against self-incrimination prior to making the statement regarding the shooting incident which led to his arrest and conviction under *W. Va.Code*, 20–2–57 [1991].

As indicated above, defendant described the shooting incident in a written statement to DNR officers. Prior to making such statement, defendant was properly advised of his constitutional rights as prescribed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[6] Furthermore, during the March 9, 1995 hearing, defendant's counsel indicated that he considered to be true the contents of the DNR Report, which included, *inter alia*, defendant's written statement as well as the comment by a DNR officer that defendant "was read his rights and a written statement was taken." Indeed, on appeal, defendant does not challenge the evidence indicating that he was, in fact, advised of his rights under *Miranda* prior to making his statement to DNR officers.[7]

 In syllabus point 6 of *State v. Hambrick*, 177 W.Va. 26, 350 S.E.2d 537 (1986), this Court held that " '[a] defendant may waive his constitutional rights, as enunciated in *Miranda*, provided the waiver is made voluntarily, knowingly and intelligently.' Syllabus Point 2, *State v. Bragg*, 160 W.Va. 455, 235 S.E.2d 466 (1977)." In the case before us, defendant voluntarily, knowingly and intelligently waived his constitutional right against self-incrimination prior to making his statement following the shooting incident. Therefore, his argument that the statutory requirement that he file with the DNR a description of the incident violated his constitutional right against self-incrimination is without merit. *See W. Va.Code*, 20–2–57 [1991].[8]

### IV.

For the reasons discussed herein, the circuit court's rulings, denying defendant's motion to dismiss and motion to declare *W. Va.Code*, 20–2–57 [1991] unconstitutional, are affirmed.

Affirmed.

---

4. *See* n. 3, *supra.*

5. *W. Va. Const.* art. III, § 5 states, in relevant part, that "[n]o person shall ... in any criminal case, be compelled to be a witness against himself[.]"

6. " '[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.' " *State v. Bragg*, 160 W.Va. 455, 459, 235 S.E.2d 466, 469 (1977) (*quoting Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706). *See State v. Hambrick*, 177 W.Va. 26, 29, 350 S.E.2d 537, 540 (1986).

7. As we have already indicated, defendant's counsel filed a motion to suppress any statements made by him on the grounds that they were "a direct result of coercion or inducements[,] ... were not voluntary," and were taken in violation of his constitutional rights. However, defendant's counsel did not seek a ruling on this motion at any time during the proceedings in this case. *See* n. 2, *supra.*

8. Defendant also contends that *W. Va.Code*, 20–2–57 [1991] is unconstitutionally vague, as it deprived him of due process of law under the Fourteenth Amendment to the *United States Constitution* and art. III, §§ 10 and 14 of the *West Virginia Constitution.* Defendant's argument stems from the following comment made by the trial judge after he denied defendant's motions: "Just out of curiosity, [the statute] says 'any person violating this section is guilty of a misdemeanor.' Does that—does that refer to if you don't file a report that you could go to jail for a year, or does that refer ... to killing or injuring somebody?"

Defendant was never charged with violating that part of *W.Va.Code*, 20–2–57 [1991] requiring that "[a]ny person who, in the act of hunting, pursuing, taking or killing of wild animals or wild birds, in any manner injures any person or property shall file with the director a full description of the accident or other casualty[.]" Thus, any contention by defendant that *W.Va.Code*, 20–2–57 [1991] is unconstitutionally vague as applied to the facts of this case is without merit.