**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent,**

**FILED**
**February 25, 2016**
**released at 3:00 p.m.**
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs)  No.  15-0112 (Monongalia County No. 14-M-AP-11)

**MATTHEW FEICHT,**
**Defendant Below, Petitioner.**

## MEMORANDUM DECISION

The petitioner, Matthew Feicht, by counsel, Michael D. Simms, appeals the Circuit Court of Monongalia County's order entered January 13, 2015, through which the court affirmed the petitioner's magistrate court convictions for driving under the influence of alcohol, second offense, and driving on a revoked license. The petitioner challenges the magistrate court's denial of his motion to suppress and the circuit court's affirmance of that decision.  The State of West Virginia, by counsel, Assistant Attorney General Nic Dalton, responds and asserts that the lower courts' suppression rulings were correct and that the petitioner's convictions should be upheld.

Upon review of the parties' arguments, the appendix record, and the pertinent authorities, we reverse the circuit court's order.  Inasmuch as this case does not present a new or significant question of law, it satisfies the "limited circumstance" requirement of Rule 21(d) of the Rules of Appellate Procedure and is properly disposed of through this memorandum decision.

## I.  Facts

At approximately 3:00 a.m. on March 15, 2013, the petitioner was arrested for driving on a revoked license and for driving under the influence of alcohol ("DUI"), second offense. Prior to trial in magistrate court, the petitioner filed a motion to suppress evidence and to dismiss all charges against him, asserting a violation of his rights under the Fourth

1

Amendment to the United States Constitution[1] and article III, section 6 of the West Virginia Constitution.[2] The petitioner argued that all evidence gathered by law enforcement following the stop of his vehicle was inadmissible at trial because the stop was not based on a reasonable, articulable suspicion that he had committed, was committing, or was about to commit a crime.

On November 12, 2013, the magistrate court held a hearing on the motion to suppress. No evidence was presented and, following oral arguments, the motion was denied. Because the suppression hearing was unrecorded, a second suppression hearing was scheduled at the petitioner's request for the purpose of creating a record and to hear any additional motions.

The second suppression hearing was held on January 27, 2014. Over the petitioner's objection, the magistrate court allowed the State to present the testimony of its only witness, Deputy Daniel Oziemblowsky of the Monongalia County Sheriff's Department.[3] The deputy explained that law enforcement officers were searching on the night in question for a male suspect who had fled on foot following a reported "physical domestic dispute." He testified that although he did not personally observe the petitioner operate his vehicle, he heard Deputy Steven McRobie, also of the Monongalia County Sheriff's Department, conduct the

---

[1]The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[2]Article III, section 6 of the West Virginia Constitution provides:

> The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized.

[3]The petitioner objected on the basis that the State had the opportunity to present witnesses at the first suppression hearing, but failed to do so, and that the sole purpose of the second hearing was to create a record of the first suppression hearing.

traffic stop of the petitioner's vehicle[4] over the radio and went to the scene of the stop to assist. It was his recollection that upon his arrival, Deputy McRobie was already at the petitioner's window speaking with the petitioner. When the State elicited testimony from Deputy Oziemblowsky concerning the basis for Deputy McRobie executing the traffic stop, the petitioner asserted a hearsay objection, which was overruled. Although Deputy Oziemblowsky first suggested that "part of the reason" Deputy McRobie stopped the petitioner's vehicle was to seek information as to whether the petitioner had seen any pedestrians in the area, he later testified that this was Deputy McRobie's "entire reason" for executing the stop.

By order entered February 14, 2014, the magistrate court found that Deputy Oziemblowsky "was not involved in, nor did he observe, the traffic stop on the Defendant's vehicle[;]" that Deputy McRobie, who performed the traffic stop, did not testify at the suppression hearing; and that after hearing the arguments of counsel and considering Deputy Oziemblowsky's testimony, the motion to suppress was denied. This order contains no legal analysis of the suppression issue.

On August 13, 2014, a jury trial was held in the magistrate court on the DUI charge.[5] Deputy McRobie testified that he did not observe the petitioner violating any traffic laws before executing the traffic stop. He stated that he was searching for a suspect in a domestic dispute who had fled on foot, and that he executed a traffic stop of the petitioner's vehicle, which was in the vicinity, to ask whether he had seen "anything suspicious." Upon approaching the petitioner's vehicle with a flashlight, the deputy testified that he noticed for the first time that the petitioner was wearing a black shirt and grey pants. Because this attire matched the description of the domestic battery suspect's clothing, he asked the petitioner for his identification. Having been previously advised of the male suspect's name, Deputy McRobie readily discerned that the petitioner "wasn't the man that we were looking for." Deputy McRobie nonetheless ran a status check on the petitioner's license pursuant to sheriff's department policy and learned that it was revoked for a prior DUI conviction. During cross-examination, Deputy McRobie testified that he did not suspect that the petitioner was DUI until after he was placed inside Deputy Oziemblowsky's vehicle for

---

[4]The record reflects the petitioner was driving in the general vicinity of where the reported domestic dispute occurred.

[5]The issue of the petitioner's prior conviction for first offense DUI, and the charge against him for driving on a revoked license, were both bifurcated from the current DUI charge.

transport following his arrest for driving on a revoked license. It was at that time that he first detected the odor of alcohol on the petitioner's breath.[6]

The jury returned its verdict finding the petitioner guilty of DUI. Upon returning to the magistrate court on October 1, 2014, for sentencing,[7] the petitioner stipulated to his first DUI conviction and, with the magistrate court's consent, entered a conditional guilty plea to the charge of driving on a revoked license, expressly reserving his right to appeal the denial of his motion to suppress and to dismiss the charges.

On October 17, 2014, the petitioner filed a petition for appeal in the circuit court seeking a reversal of the magistrate court's suppression rulings, a vacation of his convictions, and a dismissal of the charges with prejudice. A hearing was held before the circuit court on November 26, 2014, solely for the purpose of receiving the parties' oral arguments.[8]

By order entered January 13, 2015, the circuit court affirmed the petitioner's magistrate court convictions. The circuit court found that the temporary detention of an individual during the stop of an automobile by police constitutes a seizure within the meaning of the Fourth Amendment and that the proponent of a motion to suppress must demonstrate an expectation of privacy in the area searched and must establish that his Fourth Amendment rights were violated by the challenged search and seizure.[9] Although the circuit court recited an exception to the warrant requirement–when law enforcement has a reasonable, articulable suspicion that the vehicle is subject to seizure, or that the person in the vehicle has committed, is committing, or is about to commit a crime–the circuit court made no finding as to whether there was a reasonable, articulable suspicion of criminal activity in this instance. Relying upon Deputy McRobie's trial testimony, rather than the State's evidence

[6]The State's only other witness at trial, Deputy Oziemblowsky, also testified that he noticed the odor of alcohol coming from the petitioner's breath as he was placing him in his patrol vehicle. He further testified regarding the petitioner's failure of the field sobriety tests administered at the Sheriff's Office, as well as the Intoximeter results that showed the petitioner's blood alcohol content was above the legal limit.

[7]Although there is no sentencing order in the appendix record, the petitioner states that he was sentenced to two concurrent six-month terms in jail, both of which were suspended, after which he was sentenced to a period of six months on home incarceration.

[8]"An appeal of a magistrate court criminal proceeding tried before a jury shall be heard on the record in circuit court." W.Va.R.Crim.Proc.Mag.Ct. 20.1(d), in part.

[9]As explained, *infra*, the petitioner did not bear the burden of proof on this issue.

4

at the suppression hearing, the circuit court found that Deputy McRobie executed a valid traffic stop for the purpose of asking the petitioner whether he had seen anyone in the area. The circuit court also found that once Deputy McRobie observed that the petitioner's attire partially matched the description of the domestic battery suspect, his request for the petitioner's driver's license was "reasonable under the totality of the circumstances" and the sheriff department's policy of "running a check on all licenses [is] legitimate and appropriate[.]" The petitioner's appeal to this Court followed.

## II. Discussion

The petitioner asserts that the circuit court erred in affirming his magistrate court convictions. Maintaining that the State failed to satisfy its evidentiary burden during the magistrate court suppression hearings, the petitioner further asserts that the circuit court erred in upholding the magistrate court's suppression rulings and improperly considered Deputy McRobie's *trial* testimony in the process. The petitioner adds that even assuming it was proper for the circuit court to consider trial testimony in reviewing the suppression issue, as a matter of law, there still was no reasonable, articulable suspicion to justify the traffic stop. Lastly, the petitioner argues that the circuit court improperly held that it was his burden to prove that he had a reasonable expectation of privacy in the area searched or the item seized when, as here, there was no issue as to whether he had standing to assert a violation of his Fourth Amendment rights in his own vehicle.[10]

The State responds that notwithstanding the circuit court's reliance upon Deputy McRobie's trial testimony, and regardless of whether the court erred in stating that the petitioner bore the burden of proof at the suppression hearing, Deputy Oziemblowsky's suppression hearing testimony satisfied the State's burden of demonstrating that the traffic stop was lawful under the "community caretaker" doctrine. The State concedes that this doctrine was not raised below, but argues that this Court may affirm a circuit court's decision when it appears that the judgment is correct on any legal ground disclosed by the record, regardless of the reason or theory employed by the lower court in reaching its decision.[11]

In addressing the lower courts' suppression rulings, our review is plenary. In *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994), we held that "[o]n appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual

---

[10]The petitioner also assigns as error the magistrate court's decision to overrule his hearsay objection raised during the second suppression hearing. While the State concedes on appeal that this was likely error, we find the issue is mooted by our decision herein.

[11]*See* note 13, *infra.*

determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard." *Id.* at 429, 452 S.E.2d at 887, syl. pt. 3, in part. Further, "[w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below." Syl. Pt. 1, in part, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996). With these precepts in mind, we consider the parties' arguments.

It is well settled that detaining persons during a traffic stop by the police, even briefly and for a limited purpose, is a "seizure" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1994). Indeed, "[s]earches conducted outside the judicial process . . . are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions." Syl. Pt. 1, in part, *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1980), *overruled, in part, on other grounds by State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991). Moreover, and notwithstanding the circuit court's finding to the contrary, "[t]he burden rests upon the State to show by a preponderance of the evidence that [a] warrantless search falls within an authorized exception." Syl. Pt. 2, *Moore*, 165 W.Va. 837, 272 S.E.2d 804.[12] In *Stuart*, this Court recognized the exception that "[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." 192 W.Va. at 429, 452 S.E.2d at 887, syl. pt. 1, in part.

Here, the magistrate court's order denying the petitioner's motion to suppress contains minimal factual findings and no legal analysis. On appeal, the circuit court affirmed the magistrate court's suppression ruling and, in doing so, relied upon Deputy McRobie's trial testimony. As we have previously explained, however, "there is no authority . . . that upon appellate review, we should consider the . . . testimony at trial in upholding the trial court's ruling which arose out of the pre-trial suppression hearing" and that "absent a motion by the State which would trigger the trial court's duty to revisit its decision on the suppression issue, the State, on appeal, can not use trial testimony to correct an erroneous pre-trial ruling." *State v. Buzzard*, 194 W.Va. 544, 552, 461 S.E.2d 50, 58 (1995). Consequently, the circuit court should have restricted its examination to the State's evidence presented during the January 24, 2014, magistrate court suppression hearing.

_____

[12]In finding that the petitioner bore the burden of proof at the suppression hearing, the circuit court relied upon cases that addressed whether the person challenging a seizure had a privacy interest in the area searched, such as a person who was a guest passenger in a vehicle, or a guest in a home. Those cases have no application to the instant matter where the petitioner was the owner, driver, and sole occupant of his vehicle.

In reviewing the evidence at the second suppression hearing, we observe that the State's sole witness, Deputy Oziemblowsky, testified that he did not witness the petitioner driving his vehicle; that he did not execute the traffic stop; and that Deputy McRobie's "entire reasoning" for executing the stop was to seek information. Although Deputy Oziemblowsky testified regarding the petitioner's attire matching the description of the clothing worn by the domestic battery suspect, it is clear that such observations were made *after* the traffic stop had already been executed and were indisputably not a part of the basis for Deputy McRobie executing the stop.

Undoubtedly recognizing the dearth of evidence at the suppression hearing to justify the traffic stop, the State argues for the first time on appeal to this Court that, under the "community caretaker" doctrine,[13] Deputy McRobie did not need a reasonable, articulable suspicion of criminal activity before stopping the petitioner's vehicle. We first recognized this doctrine in *Ullom v. Miller*, 227 W.Va. 1, 705 S.E.2d 111 (2010), in which we stated that "[t]he 'community caretaker' doctrine is a widely recognized exception to the general warrant requirement of the Fourth Amendment of the United States Constitution." 227 W.Va. at 4, 705 S.E.2d at 114, syl. pt. 6. This Court expressed its belief that it was "appropriate to join the majority of jurisdictions who recognize the community caretaker doctrine, formally recognizing the expectation in West Virginia that the role of law enforcement personnel . . . also encompasses a non-investigatory, non-criminal role of police officers to help to ensure the safety and welfare of our citizens." *Id.* at 11, 705 S.E.2d at 121. This Court concluded that

> [b]ased upon our review of the requirements established in other states, we
> believe that the requirements recently adopted by the Supreme Court of South
> Dakota in *State v. Deneui*, 775 N.W.2d 221 (S.D. 2009), *cert. denied*, __ U.S.
> __, 130 S.Ct. 2072, 176 L.Ed.2d 422 (2010), with modification, provide

---

[13]Before undertaking any analysis under this doctrine, we note our general rule that "absent the most extraordinary circumstances, legal theories not raised properly in the lower court cannot be broached for the first time on appeal." *State v. Miller*, 197 W.Va. 588, 597,476 S.E.2d 535, 544 (1996). We have also held that "this Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965). However, as discussed *infra*, the record before this Court simply does not support a finding that the traffic stop was valid under the community caretaker doctrine.

appropriate direction as we endeavor to best satisfy the reasonableness requirements of the Fourth Amendment and Article III, Section 6, and effect a necessary balance between the privacy expectations of West Virginia citizens and the need for police officers to properly execute their community caretaking duties.

*Ullom*, 227 W.Va. at 12, 705 S.E.2d at 122. The Court then adopted the following four-part test:

> For an encounter to come within the "community caretaker" doctrine exception to the warrant requirement, the State must establish that: (1) given the totality of the circumstances, a reasonable and prudent police officer would have perceived a need to promptly act in the proper discharge of his or her community caretaker duties; (2) Community caretaking must be the objectively reasonable, independent and substantial justification for the intrusion; (3) the police officer's action must be apart from the intent to arrest, or the detection, investigation, or acquisition of criminal evidence; and (4) the police officer must be able to articulate specific facts that, taken with rational inferences, reasonably warrant the intrusion.

*Id.* at 4-5, 705 S.E.2d at 114-15, syl. pt. 7. Certainly, the community caretaker doctrine is an important exception to the general warrant requirement as it supports and recognizes the "general safety and welfare role for police officers in helping citizens who may be in peril or who may otherwise be in need of some form of assistance." *Id.*, 227 W.Va. at 10, 705 S.E.2d at 120. In fact, the community caretaking doctrine has been described as being "more akin to a health and safety check." *Deneui*, 775 N.W.2d at 239. Accordingly, it is clear from our review of the record that the community caretaker doctrine is wholly inapplicable to the case at bar.

The State's evidence at the suppression hearing demonstrated only that there had been a report of a "physical domestic dispute." The State offered no evidence regarding the domestic dispute, such as whether a weapon had been used in the dispute; whether law enforcement considered the suspect to be armed and dangerous; or whether the suspect posed a serious threat to either the community at large or the petitioner in particular, etc.[14] In other words, there is simply no evidence from the suppression hearing that would lead us to conclude that "citizens [might have been] in peril" or that the petitioner himself might have been "in need of some form of assistance" so as to justify the traffic stop under the

---

[14]We note that such evidence was also absent from the magistrate court trial.

8

community caretaker doctrine. *Ullom*, 227 W.Va. at 10, 705 S.E.2d at 120. Consequently, we are compelled to find that the suspicionless traffic stop of the petitioner's vehicle was invalid and that all evidence flowing from the stop should have been suppressed and the charges dismissed. *See* Syl. Pt. 2, in part, *State v. McNeal*, 162 W.Va. 550, 251 S.E.2d 484 (1978) ("Evidence obtained as a result of an unlawful . . . seizure . . . cannot be introduced against the accused upon his trial.").

## III. Conclusion

For the reasons set forth above, the circuit court's January 13, 2015, order is reversed and this case is remanded to the circuit court for entry of an order vacating the petitioner's magistrate court convictions and dismissing the charges with prejudice.

Reversed and remanded with directions.

**ISSUED:** February 25, 2016

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II