No. 18-0963 – *State of West Virginia v. Howells*

WORKMAN, J., dissenting:

With a dismissive wave of its hand, the majority distinguishes the case at bar from a nearly-identical case decided thirteen years ago wherein this Court came to the opposite conclusion—that a warrantless electronic interception in a person's home is a violation of article III, section 6 of the West Virginia Constitution[1]. *See State v. Mullens*, 221 W. Va. 70, 650 S.E.2d 169 (2007). The majority justifies this distinction by arguing that the electronic interception statutory scheme enacted by the Legislature in response to *Mullens,* West Virginia Code § 62-1F-1 *et seq*., has cured the constitutional infirmity occasioned by such interceptions through its regulatory scheme and, particular to this case, its retroactive authorization provisions. Despite the fact that the "retroactive" electronic intercept order ("EIO") in this case *in no way purports to be retroactive*, the majority nonetheless deems it properly retroactive by gutting each of the specific requirements for a retroactive order. By creating a fictitious "retroactive" EIO and effectively rendering West Virginia Code § 62-1F-9 a complete nullity, we are left with nothing more than the same bare electronic interception deemed unconstitutional in *Mullens*.

On June 12, 2017, the officers' investigation led them to arrange a drug buy from petitioner, to be consummated "a while later." While *waiting in their vehicle* for a

---

[1] "The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated." W. Va. Const. art. III, § 6, in part.

1

return to petitioner's *home*, the officers activated an audio/video recording device. They returned and consummated the drug buy inside petitioner's home while recording it without an electronic interception order ("EIO") and obtained petitioner's phone number, ostensibly for the purpose of contacting him for additional controlled buys. Accordingly, on June 13, 2017, the officers obtained an EIO and arranged a second controlled buy. The EIO application stated they had "purchased methamphetamine from this subject on one (1) occasion on 06/12/2017 during a controlled purchase." This is the lone reference to the previous buy. The order makes no mention of purportedly being for the purpose of retroactively authorizing the previous interception, much less contains any information detailing an exigency which would have justified the prior interception without an order. In fact, in response to "the period of time for which the interception is requested," the application states: "twenty (20) days from the date of issuance of this order." The order makes absolutely no provisions for retroactivity; instead, it deems itself effective "20( TWENTY [sic] days from the issuance of this order."

At trial, the officers admitted they had no order authorizing the first interception and argued they were taken off guard by being invited inside petitioner's home to consummate the drug buy, as justifying their failure to obtain an order. The officers assert that they inexplicably thought the drug buy would occur in the open on petitioner's porch (where no EIO would be necessary) and identified being invited inside as "the exigent circumstance."

2

Before this Court, petitioner challenges the use of the recording of the first, June 12, 2017, drug buy at trial as evidence obtained in violation of West Virginia Code § 62-1F-9 which provides that a "communications in [a] person's home may be electronically intercepted *on an emergency basis*" and retroactively authorized if:

> (1) a situation exists with respect to engaging in electronic interception before an order authorizing such interception can with due diligence be obtained; (2) the factual basis for issuance of an order under this article exists; and (3) it is determined that exigent circumstances exist which prevent the submission of an application under section three of this article
> . . . .

(emphasis added). The statute further specifically requires that "[i]f granted, the order *shall* recite the exigent circumstances present . . . ." *Id.* The majority creates three new syllabus points merely restating the salient provisions of the statute, including the exigent circumstances recitation requirement, and then affirms petitioner's conviction on the basis that exigent circumstances were in fact present[2] and that, despite the EIO's lack of recitation of exigent circumstances, this statutory violation was harmless.

First, as even a cursory review of the EIO application and order at issue reveal, in no way do they purport to be retroactive to the June 12, 2017 drug buy. The idea that this order has any retroactive effect on the illicit electronic interception at issue is

---

[2] It does so despite insisting in a footnote that petitioner did not argue the absence of exigent circumstances. This attempt to "thread the needle," while admirable, ignores the fact that petitioner argues a wholesale violation of the statute, rendering the recording a warrantless seizure in violation of article III, section 6 of the West Virginia Constitution. Regardless, the absence of an exigency, in any event, is patently plain error.

absolute fiction. It very plainly and explicitly applies for intercepts conducted within the ensuing twenty days after entry—obviously, for the purpose of covering the second buy officers arranged for that day. How the lower court or this Court reaches the conclusion that the subject EIO even qualifies for consideration under the retroactivity provisions of West Virginia Code § 62-1F-9 is impossible to discern.

Next, the majority demonstrates a startling lack of appreciation for the meaning of the word "exigent" and the near-canon body of caselaw regarding what type of circumstances qualify for this exception, concluding that an exigency existed justifying retroactive application of the subject EIO. It reaches this conclusion because the officers testified that they believed the drug buy would occur on petitioner's porch, yet petitioner invited them inside, to their purported surprise. Therefore, the majority declares it was simply "not practical" to leave and get an EIO, creating exigent circumstances to proceed with the recording.[3] In fact, it may not have been practical to abort the drug buy and get an EIO; however, there was absolutely no exigency which necessitated *electronically recording* the ensuing drug buy.

In *State v. Buzzard*, 194 W.Va. 544, 549 n.11, 461 S.E.2d 50, 55 n.11 (1995), this Court explained: "Exigent circumstances exist where there is a *compelling need for the official action* and there is insufficient time to secure a warrant[.]" (emphasis added).

---

[3] I will not belabor the obvious as suggested by the statement of facts, *i.e.* the officers *waited in their vehicle* to consummate the drug buy "a while later."

Further, in *Ullom v. Miller*, 227 W. Va. 1, 12 n.10, 705 S.E.2d 111, 122 n.10 (2010), the Court stated that "'exigent circumstances' . . . require a compelling and immediate need for the police to take swift action *to prevent something adverse from occurring[.]*" (emphasis added). *See also* Chen, Jacob Y., 48 No. 5 *Crim. Law Bulletin* (2012) ("[T]he determination of exigent circumstances *vel non* necessarily turns upon whether there is an *urgent* need that justifies a warrantless [seizure]." (emphasis added)); 79 C.J.S. Searches § 75 ("[An officer] ought to be in a position to justify [the exigency] by pointing to some real immediate and serious consequences if he or she postponed action to get a search warrant.")

There was absolutely no compelling or urgent need for the officers to *record* the drug buy—the drug buy could and would have occurred regardless. At trial, the officers' first-hand testimony regarding the drug buy would serve as compelling and sufficient evidence before the jury—precisely as occurred. The recordation was duplicative corroboration which, while convenient and ideal, was absolutely gratuitous. "Circumstances are exigent where . . . *necessary to prevent some consequence improperly frustrating law enforcement efforts*. However, *mere inconvenience* does not give rise to exigent circumstances." *Id.* (emphasis added). It may indeed have been "impractical" for the officers to stop and get an EIO upon being invited in, but that does not create an exigency necessitating the continued recording of the buy.[4] "Exigent circumstances . . . .

---

[4] In fact, there was no apparent need for the State to introduce this recording into evidence upon discovering that the statutory requirements had been plainly violated. This is particularly true given its insistence in its brief that the recording was inaudible.

is a rule of practical necessity to search or seize evidence before a warrant can be obtained. However, 'practical necessity' is not simply a matter of the convenience of the searching officers." *State v. Saunders*, 799 P.2d 159, 163 (Or. Ct. App. 1990) (citations omitted). Moreover, the statute itself only authorizes a retroactive authorization of an electronic interception where such interception was conducted "on an emergency basis." W. Va. Code § 62-1F-9.

This Court has acknowledged three universally-recognized, and nearly exclusive, exigencies:

> [T]hree well recognized situations are when police reasonably believe (1) their safety or the safety of others may be threatened, (2) quick action is necessary to prevent the destruction of potential evidence, or (3) immediate action is necessary to prevent the suspect from fleeing.

*Buzzard*, 194 W. Va. at 549 n.11, 461 S.E.2d at 55 n.11*; see also State v. Kendall*, 219 W. Va. 686, 692, 639 S.E.2d 778, 784 (2006) (same). So well-understood are these exigencies—flight/pursuit, destruction of evidence, and safety of others—that our "test" for such circumstances references these specific scenarios:

> The test for the existence of exigent circumstances is whether the facts would lead a reasonable, experienced police officer to believe the evidence might be destroyed or removed before a warrant could be secured. There must be evidence both that an officer was "actually . . . motivated by a perceived need to render aid or assistance" and "that a reasonable person under the circumstances must have thought that an emergency existed."

6

*State v. Lacy*, 196 W. Va. 104, 112 n.7, 468 S.E.2d 719, 727 n.7 (1996) (citing *State v. Cecil*, 173 W.Va. 27, 32 n.10, 311 S.E.2d 144, 150 n.10 (1983)). "Recognized situations in which exigent circumstances exist include: danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and hot pursuit of a fleeing suspect." *Id. See also* Stamm, Claire Frances, *Defining the Destruction of Evidence Exigency Exception: Why Courts Should Adopt A Strict Probable Cause Standard in the Wake of Kentucky v. King*, 82 Miss. L.J. 1417, 1418 (2013) ("The main categories of exigent circumstances include the need to provide emergency aid, apprehend a fleeing suspect, and prevent the destruction of evidence[.]").

Moreover, not only does the majority conflate impracticality with exigency, it fails to appreciate that the statutory language itself appears to anticipate this possible construction and is written in such a way as to specifically prevent this conflation. The statute provides that retroactive authorization may be obtained upon the satisfaction of three separately and specifically-enumerated conditions: 1) "a situation exists" before an EIO can be obtained; (2) a "factual basis" for an EIO exists; *and* (3) "exigent circumstances" exist. W. Va. Code § 62-1F-9. The majority has collapsed requirements one and three into one circumstance of convenience.

That is, the "situation" referenced in the first requirement is the situation in which the officers found themselves upon arranging the drug buy—an opportunity to electronically intercept criminal activity which developed in a way allegedly precluding

7

obtaining an EIO. Simply because circumstances occurred in a manner preventing, complicating, or making "impractical," obtaining an EIO does not alone permit a retroactive authorization. There must also exist an *exigency*—a urgent need to act to prevent an untoward occurrence. The officers here may have had "a situation" which developed before they could get an EIO, but that did not make the unlawful intercept necessary and urgent, justifying retroactive authorization. Proceeding with the drug buy is not the official act requiring exigency—it is the *recording* of the drug buy that is at issue.

Having engineered its analysis to create a fictitious "retroactive" EIO and find the existence of exigent circumstances, however, the majority finds itself still faced with the blatant violation of the requirement that such exigencies be recited in the retroactive EIO. This is where the majority's result-oriented analysis reaches its zenith. The opinion goes out of its way to incorporate this statutory requirement—to which there is no stated exception—into a new syllabus point: "An order . . . that approves of an electronic interception of conduct or oral communications and is made retroactive, *must recite the exigent circumstances* that prevented a law enforcement officer from obtaining an order before engaging in electronic interception in a person's home." (emphasis added). It then immediately declares violation of the statutory requirement and its newly-created syllabus point "harmless," thereby eviscerating this requirement altogether. The effect of the opinion is to nullify this requirement insofar as officers can cobble together a purported

8

"exigency" at some later point in time.  It cannot be lost on the majority that it is precisely this "after-the-fact" justification that this requirement is plainly intended to prevent.[5]

As noted at the outset of my dissent, once the majority opinion effectively abolishes the two most important requirements contained in West Virginia Code § 62-1F-9 for retroactive authorization of electronic interceptions—exigency and contemporaneous recitation of the exigency—we are left with nothing more than a garden-variety warrantless interception of an in-home communication.  This precise occurrence was declared to be a violation of article III, section 6 and therefore unconstitutional in *Mullens*.  Proudly touting our ability to fashion constitutional protections in excess of those guaranteed by the United States Constitution,[6] the *Mullens* court held that

> [i]t is a violation of West Virginia Constitution article III, § 6 for the police to invade the privacy and sanctity of a person's home by . . . surreptitiously us[ing] an electronic surveillance

---

[5] Much as the officers, under any common sense view of their testimony, conformed their testimony to characterize the EIO as "retroactive," when at the time, it clearly was only intended to cover future controlled buys.

[6] The *Mullens* court justified its departure from federal authority stating:

> "This Court has determined repeatedly that the West Virginia Constitution may be more protective of individual rights than its federal counterpart." *State ex rel. Carper v. West Virginia Parole Bd.*, 203 W.Va. 583, 590 n. 6, 509 S.E.2d 864, 871 n. 6 (1998). In other words, we may "interpret state constitutional guarantees in a manner different than the United States Supreme Court has interpreted comparable federal constitutional guarantees." *Peters v. Narick*, 165 W.Va. 622, 628 n. 13, 270 S.E.2d 760, 764 n. 13 (1980).

*Id*. at 89, 650 S.E.2d at 188.

> device to record matters occurring in that person's home without first obtaining a duly authorized court order[.]

Syl. Pt. 2, in part, *id*. The majority deals with *Mullens* by declaring it inapplicable in view of the enactment of West Virginia Code § 62-1F-9; it is correct to this limited extent. However, once it proceeds to gut the Legislature's specifically enacted remedy for the constitutional infirmity in *Mullens*, we are left with the same blatant constitutional violation previously deemed reversible error.

The majority should have vacated this conviction and its failure to do so under such strained analysis has cast a troubling cloud over our citizens' right to be free of unlawful interception of their in-home communications. Unlike the majority herein, the *Mullens* Court was cognizant of the gravity of its decision: "The impact of this Court's resolution of the issue herein presented reaches literally into the home of every citizen of our State. The immense import of our ruling in this case demands that we leave no stone unturned and no footnote unread in reaching our decision." 221 W. Va. at 73, 650 S.E.2d at 172. Given the majority's tortured analysis, one cannot even be certain it actually read the EIO at issue. More importantly, the opinion lends the Court's imprimatur to an obviously fictitious recharacterization of the purpose and purported reach of the EIO as well as an inscrutable expansion of the term "exigency." After the majority's obliteration of a statutorily mandated element for retroactive EIOs, determining which requirements of West Virginia Code § 62-1F-9 are still validly enforceable to preclude introduction of unlawfully obtained evidence is anyone's guess.

For the foregoing reasons, I respectfully dissent.